# EXHIBIT A

<table>
<tr><td>

DISTRICT COURT, DENVER COUNTY, COLORADO

Court Address:   1437 Bannock Street
                      Denver, CO 80202

</td><td>

DATE FILED
December 31, 2025 3:09 PM
FILING ID: 20DEDDCC197A5
CASE NUMBER: 2025CV34790

</td></tr>
<tr><td>

Plaintiff:    Maike S. Hirst-Roddey

v.

Defendant: Walmart, Inc.

</td><td>

▲COURT USE ONLY▲

</td></tr>
<tr><td>

Attorneys for Plaintiff:
Michael D. Rex, #57898
Rex Legal, LLC
950 S. Cherry St., Ste. 1515, Denver, CO 80246
Telephone: 303-381-1045
Fax: 303-285-4268
Michael@rex-legal.com

Shawn A. Owen, #52270
Amanda Francis Owen, #45101
Francis Owen LLC
3200 Cherry Creek South Dr., Ste. 520, Denver, CO 80209
Phone: (303) 228-1010
Fax: (720) 580-5588
shawn@francisowen.law

</td><td>

Case Number:


Division/Ctrm:

</td></tr>
<tr><td colspan="2">

**COMPLAINT FOR DAMAGES & JURY DEMAND**

</td></tr>
</table>

Plaintiff Maike Hirst-Roddey, through her counsel, alleges the following:

1.    On June 30, 2024, Maike was burned and disfigured when Walmart's Ozark Trail Camping Stove exploded.

2.    Maike's husband purchased Walmart's Ozark Trail Camping Stove on or about May 31, 2023 from a Walmart retail location in Colorado.

3.    The Stove exploded the first time it was used.

4.    Maike's leg and foot were badly burned, required painful treatment and surgical debridement.

5.    Maike's burns were so severe she needed surgery and painful skin grafts.

6.    Maike will deal with embarrassing disfigurement for the rest of her life.

7.    Walmart sold this Ozark Trail Camping Stove to Maike's family knowing it was unsafe.

**PLAINTIFF'S COMPLAINT & JURY DEMAND**
Page 1 of 12

8.    Walmart's website shows complaints before this incident about the Stove being dangerous.

9.    Walmart's website shows the following prior complaints about the Stove:



10.    Maike's family shopped in person and did not have Walmart's knowledge of the Stove's danger.

11.    On the morning of Sunday, June 30, 2024, Maike was at Chatfield State Park, outside of Denver, Colorado, with her family cooking eggs and using the Stove as instructed.

12.    Maike and her husband followed all provided instructions and heeded all safety warnings when using the Stove on June 30, 2024.

13.    The Stove had been operating for approximately twenty minutes when there was a loud popping noise, and an explosive ball of fire erupted from the Stove.

14.    Maike was directly exposed to this explosive fireball and suffered immediate, severe burns to her right foot and lower right leg.

15.    In response to the excruciating pain, Maike immediately ran into the nearby lake seeking relief from the burns.

**PLAINTIFF'S COMPLAINT & JURY DEMAND**
Page 2 of 12

16. Maike was seated in a camping chair nearby the Stove while it was in operation.

17. Maike and her husband were using a Coleman brand butane canister, as pictured on Walmart's packaging for the Stove.

18. The Coleman butane canister was equipped with a countersink release vent, a safety feature designed to prevent canister explosion by releasing pressure when overheated.

19. The butane canister's countersink release vent activated, causing multiple small perforations in the canister top in an evenly spaced circular pattern.

20. This safety mechanism released the remaining contents of the canister rapidly, which then ignited by contact with the Stove's active burner flame.

21. The force and intensity of the fire was so severe that other campers in the area came to help extinguish the flames.

22. The fireball was so intense it melted a nearby camping chair.

23. Walmart, Inc. is a foreign corporation, registered to do business in Denver County, Colorado.

24. Walmart's Colorado registered agent is CT Corporation System located at 7700 E. Arapahoe Road, Suite 220, Centennial, CO 80112.

25. Pursuant to Colo. Const. Art. 6 § 9, this Court has subject matter jurisdiction over this action because it involves a civil tort and district courts are courts of general and original jurisdiction in Colorado.

26. Pursuant to Colo. Const. Art. 15, § 10, "No foreign corporation shall do any business in this state without having one or more known places of business, and an authorized agent or agents in the same, upon whom process may be served."

27. Pursuant to C.R.S. § 13-1-124(1)(a), this Court has personal jurisdiction over Walmart because it transacts business in Denver County Colorado.

28. Pursuant to C.R.S. § 13-1-124(1)(b), this Court has personal jurisdiction over Walmart because it committed a tort in Colorado.

29. Pursuant to C.R.S. § 13-1-124(1)(c), this Court has personal jurisdiction over Walmart because it owns, uses, and/or possess real property in Denver County Colorado.

30. Venue is proper in this action pursuant to C.R.C.P. 98.

31. Venue and jurisdiction are proper in this court.

**PLAINTIFF'S COMPLAINT & JURY DEMAND**
Page 3 of 12

32. At all times material hereto, and at the time of the incident complained of, Walmart designed, manufactured, assembled, distributed, promoted, packaged, sold and/or placed into the stream of commerce a 1-burner butane stove which it sold at one or more of its retail stores, specifically described as the Stove.

33. It is undisputed that Walmart was the distributor, retailer, and seller of The Stove.

34. However, Walmart is more than just a seller, retailer and distributor because the Stove was designed or its design was ratified, was manufactured, distributed, labeled, packaged, and marketed for sale under the brand name Ozark Trail® which is brand that is owned, controlled, and operated exclusively by Walmart.

35. The Stove was also labeled, inspected, tested, and produced with instructions by, for, at the direction of, after ratification and acceptance by Walmart, or otherwise with the approval, acceptance, and at the direction or authorization of Walmart who placed it on store shelves and sold it under its own brand name, Ozark Trail®.

36. At all times material hereto, and at the time of the incident complained of, Walmart was in the business of designing, manufacturing, assembling, distributing, promoting, packaging, selling, and/or placing certain products into the stream of commerce under its brand name Ozark Trail.

37. Walmart does not simply distribute and sell products. With its Ozark Trail brand, Walmart, is, actually and/or apparently, the designer, manufacturer, assembler, labeler, warning provider, producer, distributor, and/or seller of the products that are marketed under the Ozark Trail brand name, including The Stove, which Walmart places on its store shelves and otherwise in the stream of commerce without any presale disclosure that some or all of the manufacturing tasks are delegated to an undisclosed third party.

38. At a minimum, Walmart is the apparent manufacturer, and is deemed the manufacturer of The Stove, because Walmart holds itself out to the public, and to Maike specifically, as the manufacturer of The Stove, through this packaging, selling, distributing, marketing, labeling, and selling of The Stove under its exclusive Ozark Trail brand.

39. Ozark Trail is Walmart.

40. Walmart promotes its Ozark Trail brand in a variety of ways, both in store and online, including through a website that it owns located at theozarktrail.com.

41. Walmart boasts that Ozark Trail "continues developing camping equipment that helps people enjoy outdoor recreation safely and comfortably while maintaining durability standards;" that "since its beginning, Ozark Trail has prioritized designing camping equipment," that "the gear undergoes testing in different weather situations to ensure it meets campers' needs," and that "product development incorporates feedback from actual users to improve designs and functionality." See theozarktrail.com.

**PLAINTIFF'S COMPLAINT & JURY DEMAND**
Page 4 of 12

42. The packaging for the Stove does not provide information about any other entity involved in manufacturing. The only brands or companies identified on the packaging are "Walmart, Inc." and "Ozark Trail."

43. Walmart has objectively held itself as the manufacturer of the Stove and other Ozark Trail products through its marketing and labeling, and omissions related thereto, rendering Walmart the apparent or ostensible manufacturer of The Stove.

44. Maike and consumers reasonably relied on Walmart's marketing and other actions, which portrays Walmart as the developer, designer, manufacturer, labeler, inspector, tester, and warning provider of goods sold under its Ozark Trail Brand, including The Stove, to lead consumers to reasonably believe that Walmart is the manufacturer and is otherwise responsible for design, manufacturing, warning, instructing, labeling, and testing decisions for Ozark Trail branded products, or at a minimum, that Walmart was involved in developing and testing the products sold under its Ozark Trail brand name.

45. Walmart is in exclusive possession of the applicable private label and/or supplier agreement between Walmart and other entities or individuals for The Stove ("The Agreement"). The private label or "white labeling" Agreement permits, authorizes, and guides the terms of Walmart marketing and selling The Stove under its label or branding. The Agreement allows or enables Walmart to sell, provide, and market its custom-tailored products to consumers. Walmart has the exclusive right to control the circumstances in which its Ozark Trail products are manufactured, branded, advertised, labeled, and sold, and continue to be sold. The Agreement allows Walmart to outsource, hire, or employ another company to physically manufacture or assemble a product on its behalf because Walmart does not have capabilities to physically produce many products itself.

46. Walmart private or white labels under its Ozark Trail brand to gain, increase, and capitalize on customer loyalty, high margins, wholesale income, exclusivity, and compete with other manufacturers and brands sold at its stores.

47. Upon information and belief pursuant to the Agreement, Walmart has the right to inspect, test, and make decisions regarding the design, manufacture, labeling, and warning provided, and further has the right to control and provide final approval whether to sell The Stove under its brand name Ozark Trail.

48. Additionally, or alternatively, Walmart, by branding and selling the Stove as an Ozark Trail product, Walmart undertook the duty to inspect, test, and make decisions regarding the design, manufacture, labeling, and warning providing, and to otherwise ensure that the product was free of defects in its design, manufacturing, labeling, and warning.

49. However, unbeknownst to a reasonable consumer at the time of purchase, including Plaintiff, Walmart delegated some or all of the design, manufacturing, warning, instructing, labeling, inspection and testing decisions to China Window Industry Co., LTD., which operates out of Taiwan, and/or other unknown companies located in Taiwan or China, and are outside of the jurisdiction and supervision of the United States of America.

**PLAINTIFF'S COMPLAINT & JURY DEMAND**
Page 5 of 12

50. At all times material hereto, China Window Industry Co., LTD and any other entities involved in the design, manufacture, assembly, distribution, inspection, testing, labeling, warning, instructing and packaging of The Stove were agents of Defendant Walmart.

51. At all times material hereto, Walmart had control over the actions of, and/or is responsible for the actions of, China Window Industry Co., LTD and any other entities involved in the design, manufacture, assembly, distribution, inspection, testing, labeling, warning, instructing and packaging of The Stove.

52. At all times material hereto, China Window Industry Co., LTD and any other entities involved in the design, manufacture, assembly, distribution, inspection, testing, labeling, warning, instructing and packaging of The Stove as Ozark Trail branded product, accepted the undertaking of acting as Walmart's agent in the design, manufacture, assembly, distribution, inspection, testing, labeling, warning, instructing and packaging of The Stove as Ozark Trail branded product.

53. At all times material hereto, Maike reasonably believed that The Stove purchased was designed, manufactured, provided warnings and instructions, inspected, and tested by Walmart as the owner and operator of the Ozark Trail brand and seller (not just retailer) of the Stove.

54. Walmart knows or should have known through the exercise of ordinary and reasonable care, that the Stove was unreasonably dangerous.

55. At all times material hereto, Walmart knew the Stove was unreasonably dangerous but continued to sell it.

56. At all times material hereto, Walmart knew the Stove was unreasonably dangerous but did not recall it.

57. At all times material hereto, all parties involved in the stream of commerce, including without limitation Walmart knew or should have known that users would operate The Stove as manufactured, packaged, configured, and provided to the user out of the box, but failed to take reasonable steps to design or manufacture The Stove to reasonably reduce the risks of injury from this foreseeable use; failed to make reasonable and adequate safeguards to prevent buildup of heat that it is likely to cause a foreseeable explosion or release of fire with the normal use of the Stove, and otherwise produced a product that was defective in its design, manufacturing and/or warning.

58. Prior to June 30, 2024, Walmart had notice of similar incidents involving the Stove.

59. Prior to June 30, 2024, Walmart published multiple reviews complaining of the Stove exploding and burning people.

60. Because of the explosion, Maike suffered severe burns to her right foot and lower right leg.

61. Maike's burns included partial thickness second-degree burns with significant blistering.

62. Maike's doctors determined that her injuries required surgical intervention due to the severity and extent of the burns.

63. On July 5, 2024, Maike endured surgery to debride her burned skin and apply a skin graft to her right foot and leg.

64. Surgical debridement required cutting away layers of dead and dying skin tissue, exposing raw nerve endings and causing significant pain despite anesthesia.

65. The burns were too severe for standard dressings, requiring the use of donated skin from a deceased individual as a temporary biological covering.

66. This cadaveric allograft procedure is reserved for catastrophic burn injuries and reflects the extreme severity of Maike's injuries.

67. Maike's family shopped at Walmart, and trusted Walmart and Walmart's brand Ozark Trail.

68. On November 26, 2025, the United States Consumer Product Safety Commission ordered a recall of the Stove.

69. The Consumer Product Safety Commission determined "the Stoves can explode or catch fire, posing a burn and fire hazard to consumers."

70. The Consumer Product Safety Commission found there were "26 reports of the camping stoves exploding or catching fire, including 16 reports of injuries such as second-degree burns."

71. The Consumer Product Safety Commission identified Walmart Inc. as the Importer and that the stoves were sold at "Walmart stores nationwide…"

72. The Stove contained multiple design defects causing it to be unreasonably dangerous when used for its intended purpose.

73. Specifically, the Stove was designed without proper heat shielding or thermal barrier between the burner and the butane canister compartment.

74. The Stove was designed to use butane gas canisters that lie horizontally and are enclosed in the body of the Stove during use.

75. The butane canister compartment was located too close to the burner, allowing excessive heat transfer to the canister during normal operation.

76. The lack of proper thermal barrier within the construction of the Stove allowed dangerous overheating of the butane canister, even under normal operating conditions.

**PLAINTIFF'S COMPLAINT & JURY DEMAND**

77. According to engineering analysis, the butane canister should not have released fuel during normal use but did so due to excessive heat transfer from the Stove's defective design.

78. There is no thermal barrier within the construction of the Stove to prevent heat transfer to the butane canister.

79. The Stove's defective design existed at the time the Stove left Walmart's control and were present when it was sold to consumers.

80. The defects rendered the Stove unreasonably dangerous for its intended use.

81. The defects rendered the Stove unreasonably dangerous even when used in accordance with all provided instructions and safety warnings.

82. The Stove failed during normal, intended use for which it was marketed and sold.

83. Maike did not cause the explosion.

84. Walmart accepts responsibility for the explosion.

85. Walmart accepts responsibility for the injuries Maike sustained in the explosion.

86. Because of the explosion, Maike suffered significant injuries, damages, and losses.

87. Because of the explosion, Maike will endure scarring and disfigurement for the rest of her life.

88. As a direct and proximate result of the defective design of the Stove, Maike suffered severe and permanent injuries.

89. As a direct and proximate result of the explosion, Maike suffered significant injuries, damages, and losses.

90. As a direct and proximate result of the explosion, Maike will endure scarring and disfigurement for the rest of her life

91. Maike continues to experience anguish, anxiety, and fear because of this incident.

92. Walmart is liable to Maike for Strict Products Liability as a Manufacturer.

93. Walmart had actual knowledge of a defect in the Stove.

94. Walmart had actual knowledge of a defect in the Stove prior to selling it to Maike's husband.

95. Walmart packaged the Stove and sold it as Ozark Trail.

**PLAINTIFF'S COMPLAINT & JURY DEMAND**

96.    Walmart did not disclose the actual manufacturer of the Stove.

97.    Walmart placed the Ozark Trail label on the Stove and did not disclose who the actual manufacturer is.

98.    Walmart designed, assembled, fabricated, produced, constructed, and/or prepared the Stove.

99.    Walmart exercised significant control over all or a portion of the manufacturing process of the Stove.

100.   Walmart had the right to exercise significant control over all or a portion of the manufacturing process of the Stove.

101.   Walmart specified how the Stove should be safely produced.

102.   Walmart had the right to specify how the Stove should be safely produced.

103.   Walmart was engaged in the business of selling the Stove for use or consumption

104.   Walmart sold the Stove to Maike's family.

105.   The Stove was defective and, because of the defect, it was unreasonably dangerous to people who might reasonably be expected to use it or be affected by the Stove's use.

106.   The Stove was defective at the time Walmart sold it.

107.   The Stove was expected to reach the user or consumer without substantial change in the condition in which it was sold.

108.   The Stove did reach the user without substantial change in the condition in which it was sold.

109.   Maike was a person who would reasonably be expected to use or be affected by the Stove.

110.   Maike suffered significant injuries, damages, and losses caused by the defective Stove.

111.   Walmart is liable to Maike for Negligent Failure to Warn.

112.    Walmart, as the seller and distributor of the Stove, had a duty to provide adequate warnings to consumers regarding the dangerous propensities of the product.

113.   Walmart knew or should have known that the Stove had a dangerous propensity to overheat the butane canister, causing explosive release of fuel and resulting fires and burn injuries.

114.   Walmart had actual or constructive notice of this dangerous propensity through customer reviews posted on its website documenting multiple incidents of explosions, fires, and burn injuries associated with the Stove.

**PLAINTIFF'S COMPLAINT & JURY DEMAND**
Page 9 of 12

115. Walmart had notice through government entities such as the U.S. Consumer Product Safety Commission.

116. Despite this knowledge, Walmart failed to provide adequate warnings to consumers about the risk of canister overheating, fuel release, and resulting explosions and fires.

117. Walmart's failure to provide adequate warnings was the direct and proximate cause of Maike's injuries.

118. Walmart is liable to Maike for Breach of Express and Implied Warranties.

119. Under Colorado's Uniform Commercial Code, Walmart, as the seller of the Stove, made an implied warranty of merchantability that the product was fit for the ordinary purposes for which such goods are used.

120. The Stove was not fit for ordinary camping and cooking use as it was defectively designed and unreasonably dangerous.

121. Upon information and belief, Walmart made express warranties through its marketing and sale of the Stove that the product was safe for its intended use when operated according to instructions.

122. Walmart breached the implied warranty of merchantability and any express warranties made about the product's safety.

123. Maike reasonably relied upon these warranties when the Stove was purchased and used.

124. Walmart is liable to Maike for Negligent Design.

125. The Stove, as designed and sold by Walmart, contained design defects rendering it unreasonably dangerous to users.

126. Specifically, the Stove was designed without any heat shield between the burner and the butane canister compartment, without adequate thermal barriers, and with the canister compartment located too close to the burner.

127. This design allowed excessive heat transfer to the butane canister during normal operation, causing the canister to overheat and release fuel that ignited upon contact with the active burner flame.

128. The Stove fails the consumer expectation test because the product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

129. The Stove fails the risk-utility test because the magnitude of the danger outweighs the utility of the product, and a safer alternative design was feasible that would have prevented the harm.

**PLAINTIFF'S COMPLAINT & JURY DEMAND**
Page 10 of 12

130. The design defects existed when the Stove left Walmart's control and were present at the time of the incident.

131. Walmart is liable to Maike for Negligence.

132. Walmart, as a retailer selling products to the public, owed a duty of reasonable care to sell products that are safe for their intended use.

133. Walmart breached this duty by selling a defective stove despite having actual or constructive notice of similar incidents involving explosions, fires, and burn injuries.

134. Walmart knew or should have known through customer reviews and reports from government entities that the Stove was defective and posed considerable harm to buyers.

135. Despite this knowledge, Walmart continued to sell the product without adequate warnings, modifications, or removal from sale.

136. Walmart's breach of its duty of care was negligent and unreasonable under the circumstances.

137. Walmart's negligence was the direct and proximate cause of Maike's injuries and damages.

138. Walmart is liable to Maike for negligently failing to recall the Stove.

139. Walmart's decision to sell the Stove knowing the product could explode was reckless.

140. Walmart's decision to sell the Stove knowing the product could explode disregarded the safety of others.

141. Walmart sold the Stove knowing it could explode without regard to consequences.

142. Walmart is liable to Maike in an amount determined by the jury.

## DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiff seeks a jury trial and judgment against Defendant as follows:

(a)    For all losses and damages allowed by law, in an amount to be proven at trial sufficient to make Plaintiff whole according to proof, and specifically including, without limitation, general and special damages for physical injuries; past and future medical expenses; out-of-pocket expenses; physical pain and suffering; emotional pain and suffering; disfigurement; and loss of enjoyment of life;

(b)    For all awardable costs of suit, including pre-judgment interest from the date of the incident, post-judgment interest, fees; and

(c)    For all other and further relief as the Court deems just and proper and/or which may be allowed by applicable law.

(d)    Plaintiff demands a jury trial, and the jury fee is tendered.

Respectfully submitted December 31, 2025.

By: */s/ Shawn Owen*
Shawn A. Owen, #52270
Francis Owen, LLC
Michael D. Rex, #57898
Rex Legal, LLC

Attorneys for Plaintiff

**PLAINTIFF'S COMPLAINT & JURY DEMAND**
Page 12 of 12